Jay T. Jambeck (SBN # 226018)
jjambeck@leighlawgroup.com
Mandy G. Leigh (SBN # 225748)
mleigh@leighlawgroup.com
Damien B. Troutman (SBN # 286616)
dtroutman@leighlawgroup.com
LEIGH LAW GROUP, P.C.
870 Market St., Suite 1157
San Francisco, CA 94102
Office: (415) 399-9155
Fax: (415) 795-3733

Attorney for Plaintiff,
I.H., by and through M.A.

# UNITED STATES DISTRICT COURT

# EASTERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| I.H., by and through M.A., <br><br> Plaintiff, <br><br> v. <br><br> GOLDEN PLAINS UNIFIED SCHOOL DISTRICT, and VINCE GONZALEZ, an individual, <br><br> Defendants. | **Case No.**: <br><br> **PLAINTIFF'S COMPLAINT FOR DAMAGES FOR:** <br><br> 1. **VIOLATION OF SECTION 504 OF THE REHABILITATION ACT** <br> 2. **VIOLATION OF TITLE II OF THE AMERICANS WITH DISABILITIES ACT;** <br> 3. **NEGLIGENCE;** <br> 4. **NEGLIGENT TRAINING AND SUPERVISION;** <br> 5. **VIOLATION OF THE IMPLEMENTING REGULATIONS OF SECTION 504 OF THE REHABILITATION ACT** <br><br> **JURY TRIAL DEMANDED** |

Plaintiff I.H. (also herein referred to as "Plaintiff" or "I.H."), a minor, by and through his Parent and Guardian ad Litem, M.A., files this Complaint for Damages against Defendants GOLDEN PLAINS UNIFIED SCHOOL ("GPUSD," "District," OR "Defendant") and VINCE GONZALEZ ("GONZALEZ"), inclusive (collectively, "Defendants"), and against each of them, jointly and severally, alleges the following:

## INTRODUCTION

1. I.H. is a shy, well-mannered sixteen-year-old student who became eligible for special education and related services in May of 2012 under the category of Specific Learning Disability and has maintained eligibility under the same category to date. I.H.'s disability negatively impacts his ability to read and present or speak in public. His mannerisms and general presentation are also significantly affected by his disabling condition and impact him socially. Following years of extreme, unrelenting, and unprovoked physical and verbal peer bullying targeting his disabling conditions, I.H. began exhibiting excessive school refusal and suicidal ideation. Although GPUSD had full notice of the bullying, it failed to appropriately intervene, forcing M.A. to remove I.H. from school to ensure his safety. I.H. has suffered in light of the District's failure to take reasonable action and has been deprived of equal access to public educational activity as a result. This Complaint seeks damages.

## THE PARTIES

2. Plaintiff I.H. is a minor who, at all times relevant to this complaint, was a resident of San Joaquin county, California. This action is brought through I.H.'s parent, M.A. I.H. is diagnosed with a Specific Learning Disability.

3. GPUSD is a public entity located in San Joaquin county, California that, at all times relevant to this complaint, was a governmental entity receiving federal funding for the provision of educational services to children attending school within its jurisdiction. Defendant was responsible for I.H.'s care, education, and protection pursuant to state and federal law at all times relevant to this complaint.

4. GONZALEZ is an individual who was, at all times relevant, the principal at Tranquility High School ("Tranquility High") and was acting within the course and scope of his employment with GPUSD.

**JURISDICTION AND VENUE**

5. This Court has jurisdiction over the subject matter of this dispute pursuant to 28 U.S.C. § 1331; 28 U.S.C. § 1367(a); 42 U.S.C. § 12131; and, 29 U.S.C. § 701, *et seq.*

6. Venue is proper within this judicial district pursuant to 28 U.S.C. § 1391(b)(2) and (c) because Defendant is a resident of the Eastern District of California or is considered a resident of this judicial district for the purposes of venue.

**FACTUAL ALLEGATIONS**

7. Plaintiff has appropriately complied with exhaustion requirements for administrative remedies under the IDEA with respect to claims against GPUSD for enforcement of rights due to denial of a free appropriate public education program.

8. I.H. was enrolled in and attended Tranquility High, located within GPUSD's jurisdictional boundaries, for grades nine and ten during the 2017-18 and 2018-19 school years.

9. At a special education due process hearing ("Due Process hearing" or "hearing") initiated by M.A. and held on May 29 and 30, 2019, District employees reported pervasive bullying on Tranquility High's campus during the 2017-18 and 2018-19 school years. GPUSD staff described the bullying as verbal, physical, and mental attacks, including creating an atmosphere wherein certain students were made to feel they did not belong, physical pushing, and prevalent use of expletives and offensive language. I.H. was singled out due in large part as a result of his disabling condition.

10. At hearing, I.H.'s ninth grade (2017-18) agricultural earth science teacher described her classroom as rife with the same physical, mental, and verbal bullying, and reported that the District and school administration failed to effectively address the ongoing bullying issues.

11. I.H.'s mannerisms and presentation as a result of his disability made him subject to targeting and pervasive verbal and physical abuse by typically developing peers throughout his ninth-grade year (2017-18). However, I.H.'s shy and quiet nature also made him reluctant to report peer bullying and effectively masked the torment he was enduring. M.A. reports that although I.H. described being the target of constant peer bullying throughout the 2017-18 school year, he refused to provide more detail to her out of embarrassment and humiliation.

12. The effects of the constant peer abuse had an increasingly negative impact as it escalated throughout I.H.'s ninth-grade year and substantially impacted his equal access to educational programs and activities. Although I.H. ended the Fall 2017 semester with a 3.14 grade point average ("GPA"), by the end of 2017-18 school year his GPA had dropped more than half a grade point to a 2.50. Accordingly, I.H.'s academic decline throughout the school year corresponded directly with progressively worse peer bullying that targeted conditions resulting from his disability.

13. On April 20, 2018, Tranquility High's school psychologist completed a triennial multidisciplinary assessment in which I.H.'s math teacher reported that conduct constituting bullying, including exclusion and verbal harassment, took place in her classroom and that I.H. had difficulty coping in that environment. She noted that I.H. was "not accepted by his classroom peers" and that "[t]he best he [had done] all school year" was when a number of the most "disruptive" students who were "loud and ma[d]e fun of others" were removed from the classroom. Accordingly, the District had actual knowledge of and was on full notice about peer bullying affecting I.H. Notwithstanding, GPUSD failed to properly intervene to ensure I.H.'s safety and counteract continued bullying.

14. Additionally, the April 2018 assessment shows that both I.H.'s math and resource teachers reported that he was respectively putting forth only twenty-five and fifty percent effort in their classrooms. M.A.'s parent reports of concerns that the loud and disrespectful conduct of I.H.'s peers in class caused him not to participate corroborated these teacher reports. Similarly,

GPUSD's school psychologist remarked that I.H. had better success in more controlled, or structured environments. Despite explicit reports of peer behavior sufficiently serious to create a hostile environment and evidence that I.H.'s disabling conditions subjected him to targeting and aggressive peer conduct, the District was deliberately indifferent and failed to take reasonable action.

15. At a subsequent individual education program ("IEP") meeting held in April of 2018, M.A. gave notice again that I.H. was negatively affected by repeated aggression from peers targeting him as a result of his disabling conditions, including verbal and psychological taunting from peers with perceived superiority of power that inflicted extreme discomfort. Despite its own April 2018 assessment report featuring teacher admissions of I.H. being subject to exclusion and ridicule by peers and repeated parent reports of I.H. being the target of aggressive peers, GPUSD failed to appropriately respond to the peer bullying.

16. Rather, GPUSD's school psychologist offered I.H. just seven extra counseling sessions in as many weeks between the April 2018 assessment and the end of the 2017-18 school year. Notably, throughout the Spring 2018 semester, I.H. regularly complained of stomachaches and not feeling well to be removed from class, sent to the office, and released from school early in an attempt to escape the torment of constant verbal and physical abuse by peers. He had not previously demonstrated such school-avoidant behavior. Shockingly, M.A. reports being told by District staff that peer conduct causing I.H. this degree of anxiety was commonplace. Given that by Spring of 2018 I.H. was also experiencing apparent psychosomatic responses to the stress of being bullied by peers in class, GPUSD's dismissal of burgeoning school-avoidant behavior and offer of just seven counseling sessions was insufficient to address the bullying or ensure I.H.'s safety.

17. During the seven-week period I.H. attended informal counseling sessions with District staff, he informed of physical and verbal bullying in one of his classes, that he did not feel safe in that same classroom, that he was stressed out, that Tranquility's classrooms lacked structure, that

he was being picked on, and that he feared bullying. Still, GPUSD failed to take adequate steps to address evidence of peer harassment and bullying.

18. I.H. continued to experience unprovoked verbal and physical peer abuse due to manifestations of his disabling condition during the 2018-19 school year. And like the year prior, the effects of peer bullying caused him to become severely withdrawn and substantially impacted his equal access to educational activity. The effects of his disabling condition also undermined his ability to regularly report peer bullying. As a result, he experienced increased school refusal, fear of using the restroom at school, and continued exhibiting physical manifestations of stress at school, including stomachaches and headaches.

19. At hearing, M.A. reported finding I.H. in his room perseverating on being picked on and excluded in school during the Fall 2018 semester and that he had trouble sleeping during the same period. She reports that I.H.'s perseveration on the bullying at school became a regular occurrence during the Fall of 2018 and described I.H.'s behavior at home as severely withdrawn, depressive, and markedly different from the jovial child he was before he was subject to verbal and physical peer abuse. At hearing, I.H.'s case manager also testified to noticing I.H. was tired in school, corroborating parent reports regarding I.H.'s trouble sleeping and the negative effects this had on his access to educational activity.

20. During the Fall of 2018, I.H. summoned the courage to confide in his case manager Robert Hill ("Mr. Hill")—whom he had known since middle school—that he was afraid to attend two of his classes because he felt excluded and unsafe. District attendance records indicating repeated excusals from classes between September and December 2018 display I.H.'s school refusal behavior as a result of these feelings.

21. On November 7, 2018, I.H. arrived at Mr. Hill's class visibly distraught. During class he cried with his head down and was convulsing. After class, I.H. disclosed to Mr. Hill that he was unhappy, felt he did not belong, was encouraged by peers to kill himself, and was experiencing suicidal ideation.

22. Following this disclosure, Mr. Hill informed M.A., the District's special education coordinator, and Tranquility High's site counselor that I.H. had reported suicidal ideation. However, GPUSD failed to implement appropriate suicide prevention protocol, including a risk assessment.

23. In a subsequent meeting with his counselor Jessica Rios ("Ms. Rios"), I.H. described that his likely plan to commit suicide would be to overdose on pills. On information and belief, Ms. Rios failed to initiate or request an appropriate risk assessment in response and reported to M.A. that I.H.'s disclosure did not constitute suicidal ideation.

24. On November 13, 2018, M.A. and I.H.'s grandmother attended a meeting with GONZALEZ as well as the District's superintendent and special education coordinator. During the meeting, M.A. stated concern that the District had failed to conduct a risk assessment and gave notice again that I.H. was being bullied and was afraid to attend school. M.A. also reported that I.H. feared retaliation should he provide the names of the students bullying him. Even after this meeting, the District still failed to investigate I.H.'s disclosure, conduct a risk assessment, or implement an appropriate safety plan.

25. Parent reports that during the November 13 meeting, District staff, including GONZALEZ, stated that they would alert I.H.'s teachers to monitor his social-emotional status. However, on information and belief, as of at least March 2019 this notice had not been communicated to all staff interacting with I.H. daily.

26. At a follow up meeting on November 28, 2018, M.A. expressed concern that the District had still not implemented any plan to ensure I.H.'s safety at school. At the time, the District had also not completed any risk assessment or investigation in connection with I.H.'s reports of pervasive bullying and disclosure of suicidal ideation two weeks prior. Although GONZALEZ indicated he would initiate an investigation, no investigation ever occurred.

27. On December 6, 2018, M.A. held a telephone call with Ms. Rios during which she repeated her concerns about I.H.'s safety at school and the District's failure to respond

appropriately to his reports of bullying and consequent suicidal ideation. She also informed that I.H. continued to report feeling unsafe at school.

28. During the period following November 7, 2018, I.H. devolved emotionally, exhibited extreme withdrawal and depressive symptoms across settings, and routinely failed to turn in assigned work. He went from passing all of his classes prior to November 7, 2018 to failing four of seven of his courses, a 1.0 GPA, and being behind on more than thirty assignments by March of 2019. Although M.A. reported speaking with District staff several times by Spring of 2019 regarding the impact of I.H.'s severe withdrawal on his ability to benefit from education activities, depressive symptomology, physical manifestations of depressive symptoms (*e.g.* stomachaches and headaches), and his rapid academic decline as a result of pervasive bullying, the District failed to take appropriate action.

29. Without proper District intervention, I.H. continued to be a target of bullying due to mannerisms and presentation resulting from his disability. On March 21, 2019, a peer hit I.H. hard in the face with an apple that shattered upon impact, leaving remnants on his face and scattered about the floor. Although the incident took place in front of a teacher, GPUSD staff failed to initiate appropriate remediation.

30. As a result of GPUSD's deliberate indifference towards the ongoing bullying, I.H's school refusal behavior increased. Between January and April 2019, he accumulated seventeen full-day and five partial-day absences because he was unwilling to attend school due to bullying.

31. In May of 2019, I.H. informed M.A. that he did not want to attend school because he was being "mad-dogged," a term used to describe a malicious glare indicating aggression, by a peer at school. I.H. cried and informed M.A. that he refused outright to attend school because he was afraid.

32. In light of the pervasive bullying and credible gang violence, including a shooting and gang fights, at Tranquility High and involving students there during the Spring of 2019, M.A. was forced to withhold I.H. from school on May 9, 2019 to ensure his safety and well-being.

Because GPUSD continued to be deliberately indifferent towards the ongoing and pervasive bullying, I.H. did not return to school through the end of the 2018-19 school year.

33. M.A. reports that although I.H. was absent from school for approximately a month, GPUSD never sought information regarding I.H.'s whereabouts, failed to remediate the pervasive verbal and physical peer abuse such that he could return to school, and did not initiate attendance or truancy action to compel his education. GPUSD's failures in this regard demonstrated a total lack of concern for I.H.'s well-being.

34. Thus, after years of extreme, unrelenting, and unprovoked physical and verbal peer bullying targeting I.H.'s disabling conditions, GPUSD's negligent failure to appropriately intervene subjected I.H. to unreasonable risk of harm and ultimately deprived him of equal access to free and appropriate educational activity.

35. I.H. has not returned to Tranquility High since May of 2019. At an IEP meeting held at the end of August 2019, I.H. was assigned to home instruction placement due to his continued fear of attending school at Tranquility High's campus and although the placement is inappropriate for lack of academic challenge and typical peers. Accordingly, I.H. has been deprived of his right to equal access to educational activity due to GPUSD's negligent failure to appropriately and timely intervene to remediate pervasive peer bullying.

36. To date, Plaintiff continues to receive therapy as ordered by the Administrative Law Judge at hearing for the unresolved trauma he experienced at tranquility High due to bullying, of which Defendants had notice but failed to take appropriate remedial action.

## FIRST CAUSE OF ACTION

## VIOLATION OF SECTION 504 OF THE REHABILITATION ACT

### (Against GPUSD)

37. Plaintiff incorporates and re-alleges the allegations in paragraphs 1-36 above as though fully set forth herein.

38. Plaintiff is a person with a handicap/disability that substantially limits the major life activities of learning and socialization and who is otherwise qualified for services from GPUSD.

39. At all times material, GPUSD received federal funding for all aspects of its program.

40. Plaintiff was subjected to disability discrimination that was so severe and pervasive that it deprived him of access to educational activity, opportunities and benefits.

41. GPUSD had actual notice of the bullying that precluded Plaintiff from accessing educational activity.

42. GPUSD was deliberately indifferent to the bullying, failed to adequately address the ongoing bullying, and failed to take timely and reasonably appropriate action under the circumstances known to GPUSD.

43. As a direct and proximate result, Plaintiff suffered general damages, including severe emotional distress, anxiety, and onset conditions, including depression.

## SECOND CAUSE OF ACTION
## VIOLATION OF TITLE II OF THE AMERICANS WITH DISABILITIES ACT

**(Against GPUSD)**

44. Plaintiff incorporates and re-alleges the allegations in paragraphs 1-36 above as though fully set forth herein.

45. Plaintiff is a person with a disability that substantially limits the major life activities of learning and socialization and who is otherwise qualified for services from GPUSD.

46. GPUSD is a public entity.

47. Plaintiff was subjected to disability discrimination that was so severe and pervasive that it deprived him of access to educational activity, opportunities and benefits.

48. GPUSD had actual notice of the bullying that precluded Plaintiff from accessing educational activity.

49. GPUSD was deliberately indifferent to the bullying, failed to adequately address the ongoing bullying, and failed to take timely and reasonably appropriate action under the circumstances known to GPUSD.

50. As a direct and proximate result, Plaintiff suffered general damages, including severe emotional distress, anxiety, and onset conditions, including depression.

## THIRD CAUSE OF ACTION
## NEGLIGENCE

**(Against GONZALEZ)**

51. Plaintiff incorporates and re-alleges the allegations in paragraphs 1-36 above as though fully set forth herein.

52. GPUSD and its employees including GONZALEZ at all times had a duty of care to protect I.H. from harm where it knew or reasonably should have known of the particular harm to I.H.

53. GONZALEZ breached that duty after receiving actual notice that I.H. was being subjected to ongoing bullying and in failing to conduct an appropriate investigation and to take appropriate action reasonable under the circumstances to cease the bullying.

54. GONZALEZ at all times had a duty to investigate and resolve Plaintiff's complaints of bullying and intimidation in accordance with the California Code of Regulations and the policies of GPUSD.

55. M.A., on behalf of I.H., made several verbal complaints of bullying.

56. GONZALEZ failed to investigate and resolve the allegations in accordance with Chapter 5.1 of the California Code of Regulations and the policies of GPUSD in order to abate the bullying.

57. As a direct and proximate result, Plaintiff suffered general damages, including severe

emotional distress, anxiety, and onset conditions, including depression.

## FOURTH CAUSE OF ACTION

## NEGLIGENT TRAINING/SUPERVISION

**(Against GONZALEZ)**

58. Plaintiff incorporates and re-alleges the allegations in paragraphs 1-36 above as though fully set forth herein.

59. GONZALEZ at all relevant times owed Plaintiff a duty to properly train and supervise employees to adequately protect GPUSD students, including I.H., from bullying on the school campus through the proper supervision of the students.

60. On information and belief, the GONZALEZ breached that duty by failing to properly train and supervise its employees to properly protect its students, including I.H., from bullying on the school campus through proper supervision of the students.

61. As a direct and proximate result of the breach of duty to Plaintiff, he suffered general damages, including severe emotional distress, anxiety, and onset conditions, including depression.

## FIFTH CAUSE OF ACTION

(Violation of the Implementing

Regulations of Section 504 of the Rehabilitation Act)

29 U.S.C. §§794 et seq. - Against GPUSD

62. Plaintiff incorporates by reference each and every allegation of Paragraphs 1- 60 of the Complaint as though fully set forth herein.

63. Pursuant to 34 C.F.R. § 104.33, federally-funded schools must provide handicapped students with a free and appropriate public education.

64. I.H. was denied a free and appropriate education and a reasonable accommodation that he needed in order to enjoy meaningful access to the benefits of public services; namely, GPUSD responded with deliberate indifference to the ongoing acts of bullying against I.H. as a result of his handicap/disability.

65. As a direct and proximate result, Plaintiff suffered general damages, including severe emotional distress, anxiety, and onset conditions, including depression.

## JURY TRIAL

66. Plaintiff demands a jury trial on all matters by which a jury trial is afforded by right.

WHEREFORE, Plaintiff prays for the following:

1. General and Compensatory damages determined according to proof, but in an amount no less than $500,000;
2. Special damages in an amount to be shown by proof at trial;
3. Costs of this suit;
4. Attorneys' fees;
5. Other and further relief as the Court deems appropriate and just.

Date:  February 7, 2020               LEIGH LAW GROUP, P.C.

/s/ Jay T. Jambeck
_____
JAY T. JAMBECK
Attorney for Plaintiff