UNITED STATES DISTRICT COURT

FOR THE EASTERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| Ian Holguin, | No. 2:20-CV-00292-KJM-CKD |
| Plaintiff, | ORDER |
| v. | |
| Golden Plains Unified School District, and Vince Gonzalez, an individual, | |
| Defendants. | |

This matter is before the court on defendants' motion to dismiss. Plaintiff Ian Holguin alleges defendants Golden Plains Unified School District (GPUSD) and Principal Vince Gonzalez (collectively "defendants") were unresponsive to his needs for assistance in response to the peer bullying he experienced while attending Tranquility High School. **The motion is granted in part and denied in part.**

## I.      BACKGROUND

Holguin is eighteen years old. First Am. Compl. ¶ 1, ECF No. 19. He identifies his specific disability as a learning and socialization handicap. *Id*. ¶ 38. Since May 2012, Holguin has qualified under the category of "Specific Learning Disability" to receive special education and related services at school. *Id*. ¶ 1. His disability significantly impacts his appearance and gestures, as well as his ability to read, speak and relate to others socially. *Id*.

/////

1

1    During the 2017–18 and 2018–19 school years, Holguin attended Tranquility High School

2    for grades nine and ten.  *Id.* ¶ 8.  Tranquility High School is within the GPUSD's jurisdiction.  *Id.*

3    As a public entity, GPUSD receives federal funding for its educational programs.  *Id.* ¶¶ 3 & 7.

4    Throughout his ninth-grade year, Holguin experienced "extreme, unrelenting, and

5    unprovoked" physical and verbal peer bullying.  *Id.* ¶¶ 1 & 11.  His shy and quiet nature initially

6    made it difficult for him to report the constant peer abuse he experienced.  *Id.* ¶¶ 11–12.  He felt

7    embarrassed and humiliated.  *Id.* ¶ 11.  As the bullying escalated throughout his ninth-grade year,

8    it "substantially impacted" his equal access to educational programs and activities.  *Id.* ¶ 12.  His

9    grade point average (GPA) declined from 3.14 to 2.50.  *Id.*

10    On April 20, 2018, Holguin's math teacher reported to the school psychologist she had

11    witnessed Holguin being bullied, excluded and verbally harassed by other students in her

12    classroom.  *Id.* ¶ 13.  She reported he was "not accepted by his classroom peers."  *Id.*  She

13    notified the GPUSD, through the school psychologist, of the impact the peer bullying was having

14    on Holguin, including his diminished effort in classroom activities and lack of coping ability.  *Id.*

15    ¶¶ 13–14.  The school psychologist also reported that Holguin had better success in more

16    "controlled, or structured environments."  *Id.* ¶ 14.  As an institution, the GPUSD was

17    unresponsive.  *See id.*

18    That same month, Holguin's mother, M. A., gave notice at an individual education

19    program (IEP) meeting that Holguin was negatively impacted by peers taunting him repeatedly

20    because of his disability.  *Id.* ¶ 15.  In response, the school psychologist offered Holguin seven

21    extra counseling sessions for the weeks between April and the end of the school year.  *Id.* ¶ 16.

22    During the seven-week period, Holguin attended informal counseling sessions with GPUSD staff.

23    *Id.* ¶ 17.  He informed GPUSD staff of the physical and verbal bullying in one of his classes.  *Id.*

24    GPUSD took no action to address Holguin's concerns.  *Id.*  Holguin continued to fear attending

25    school and using the restroom at school; he complained of stomach aches and headaches.

26    *Id.* ¶ 18.

27    During a school hearing, M.A. reported Holguin's behavior at home as severely

28    withdrawn, depressive and "markedly different from the jovial child" he was before.  *Id.* ¶ 19.

She reported finding Holguin in his bedroom "perseverating" due to being picked on and excluded at school.  *Id.*

In the Fall of 2018, Holguin confided in his case manager at GPUSD, Mr. Robert Hill, that he was afraid to attend two of his classes because he felt excluded and unsafe.  *Id.* ¶ 20.  He also reported being subjected to physical and verbal abuse at school.  *Id.*  He also disclosed that peers had encouraged him to kill himself.  *Id.* ¶¶ 21–22.  He experienced suicidal ideation because he felt he did not belong.  *Id.*  Mr. Hill informed M.A., the GPUSD's special education coordinator, and Tranquility High's site counselor about Holguin's suicidal ideation.  *Id.* ¶ 22.  In a separate meeting, Holguin also disclosed to his school counselor, Jessica Rios, his plan to commit suicide by "overdo[sing] on pills."  *Id.* ¶ 23.  Ms. Rios did not request a risk assessment in response to Holguin's plan.  *Id.*

By November 7, 2018, he had failed four of seven classes.  *Id.*  He was behind in more than thirty assignments and had a 1.0 GPA.  *Id.*  In November 13, 2018, at a meeting with Gonzalez and GPUSD's superintendent and special education coordinator, M.A. expressed concern the GPUSD had not completed any risk assessment or investigation to address Holguin's reports of pervasive bullying.  *Id.* ¶ 24.  A couple weeks later, at a follow-up meeting with GPUSD, M.A. expressed concern no investigation ever occurred.  *Id.* ¶ 26.

On March 21, 2019, a peer hit Holguin with an apple, leaving remnants on his face.  *Id.* ¶ 30.  Although a teacher witnessed the incident, GPUSD staff did not take action to remedy the situation.  *Id.*  Holguin was absent from school for 17 full-days and 5 partial-days, from January to April of 2019.  *Id.* ¶ 30.  He refused to attend school and routinely missed turning in homework assignments.  *Id.* ¶ 28.  On May 2019, Holguin informed M.A. that he did not want to go to school because he was afraid to face his peers' aggressive glares, what plaintiff describes as being "mad-dogged."  *Id.* ¶ 31.  Holguin did not return to school through the end of the 2018–19 school year.  *Id.* ¶ 32.  In August 2019, at an IEP meeting Holguin was assigned to home instruction.  *Id.* ¶ 35.

On April 2, 2019, an administrative law judge with California's Office of Administrative Hearings (OAH) ordered Holguin to receive therapy to mitigate the trauma he suffered at

1    Tranquility High School as a result of the pervasive bullying he experienced. *Id.* ¶ 36; Mot. to

2    Dismiss, Req. Judicial Notice Ex. A at 4, ECF No. 24-2.  By virtue of taking the matter to hearing

3    before the administrative law judge, Holguin avers he complied with exhaustion requirements for

4    administrative remedies before filing his complaint in this court.  First Am. Compl. ¶ 7.

5        Holguin asserts five claims against defendants: (1) violation of the Rehabilitation Act,

6    § 504 against GPUSD; (2) violation of Title II of the Americans with Disabilities Act (ADA)

7    against GPUSD; (3) negligence against Gonzalez; (4) negligent training and supervision against

8    Gonzalez; and (5) violation of implementing regulations of the Rehabilitation Act, § 504 against

9    GPUSD. *Id.* ¶¶ 37−65.  Defendants move to dismiss Holguin's claims under Federal Rules of

10   Civil Procedure 12(b)(1) and 12(b)(6).  Mot. to Dismiss (MTD) at 2, ECF No. 24.  Defendants'

11   request for judicial notice of the April 2, 2019 decision from the OAH is GRANTED. *Id.* & Ex.

12   A, ECF No. 24-2; Fed. R. Evid. 201.  Holguin opposes the motion to dismiss.  Opp'n, ECF No.

13   27.  Defendants have replied, Reply, ECF No. 31.  The court resolves the motion below.

14       The court need not reach defendants' arguments to dismiss claims 1 and 3 against

15   Gonzalez on grounds the court lacks subject-matter jurisdiction under Rule 12(b)(1).  "[A] claim

16   of . . . immunity is properly brought as a motion to dismiss under Rule 12(b)(6), not Rule

17   12(b)(1)." *Williams v. Cty.*, No. 2:15-CV-01760, 2016 WL 4745179, at *3 (D. Or. Sept. 12,

18   2016) (internal quotations omitted).  The court grants plaintiff the opportunity to amend the

19   complaint, applying Federal Rule of Civil Procedure 12(b)(6). *See May Dept. Store v. Graphic*

20   *Process Co.,* 637 F.2d 1211, 1216 (9th Cir. 1980).

21   **II.    LEGAL STANDARD**

22       A party may move to dismiss for "failure to state a claim upon which relief can be

23   granted." Fed. R. Civ. P. 12(b)(6).  The motion may be granted only if the complaint lacks a

24   "cognizable legal theory" or if its factual allegations do not support a cognizable legal theory.

25   *Hartmann v. Cal. Dep't of Corr. & Rehab.*, 707 F.3d 1114, 1122 (9th Cir. 2013).  The court

26   assumes all factual allegations are true and construes "them in the light most favorable to the

27   nonmoving party." *Steinle v. City & Cty. of San Francisco*, 919 F.3d 1154, 1160 (9th Cir. 2019).

28   /////

1    If the complaint's allegations do not "plausibly give rise to an entitlement to relief," the motion

2    must be granted.  *Ashcroft v. Iqbal*, 556 U.S. 662, 679 (2009).

3        A complaint need contain only a "short and plain statement of the claim showing that the

4    pleader is entitled to relief," Fed. R. Civ. P. 8(a)(2), not "detailed factual allegations," *Bell Atl.*

5    *Corp. v. Twombly*, 550 U.S. 544, 555 (2007).  But this rule demands more than unadorned

6    accusations; "sufficient factual matter" must make the claim at least plausible.  *Iqbal*, 556 U.S. at

7    678.  In the same vein, conclusory or formulaic recitations elements do not alone suffice.  *Id*.

8    (quoting *Twombly*, 550 U.S. at 555).  This evaluation of plausibility is a context-specific task

9    drawing on "judicial experience and common sense."  *Id*. at 679.

10   **III.   DISCUSSION**

11       **A.     Liability of GPUSD**

12       Defendants argue the court should dismiss Holguin's claims 1, 2 and 5 against the

13   GPUSD on three grounds: (1) Holguin has not established his disability in his pleadings; (2) the

14   GPUSD employees had no knowledge of any bullying because Holguin did not disclose the

15   details of those encounters; and (3) there is no nexus between allegations of the peer-to-peer

16   bullying and Holguin's alleged disability.  MTD at 8−10, 15−16.

17       The ADA and the Rehabilitation Act § 504 "prohibit[] public entities from discriminating

18   against people with disabilities by denying them access to or participation in that entity's benefits,

19   services, and programs."  *Wormuth v. Lammersville Union School District*, 305 F. Supp. 3d 1108,

20   1124 (E.D. Cal. Jan. 22, 2018).  To state a claim under these Acts,  plaintiff must allege: (1) he is

21   an individual with a disability; (2) he is otherwise qualified to participate in or receive the benefit

22   of some public entity's services, programs, or activities; (3) he was either excluded from

23   participation in or denied the benefits of the public entity's services, programs, or activities, or

24   was otherwise discriminated against by the public entity; and (4) the district receives financial

25   assistance (for a Rehabilitation Act claim) or is a public entity (for an ADA claim).  *Id*.

26       **1.     Claims 1 and 2**

27       Holguin's pleadings satisfy the first, second and fourth prongs of the ADA and

28   Rehabilitation Act claims he asserts.  *See I.V. v. Vacaville*, No. 19-273, 2018 WL 820169, at *9

(E.D. Cal. Feb. 19, 2020) (finding plaintiff with autism sufficiently stated disability claim based on being denied benefits at her public school when bullied and harassed by other students.). Here, Holguin has qualified for special education and related services at GPUSD since 2012 based on his disability, which he identifies as a learning and socialization handicap. First Am. Compl. ¶ 38. As a public entity, GPUSD receives federal funding to provide educational services to its students. *Id*. ¶ 3.

To meet the third prong, he alleges confiding in his case manager, Mr. Robert Hill, that he was afraid to attend two of his classes because he felt excluded and unsafe. *Id*. ¶ 20. He also disclosed that peers had encouraged him to kill himself. *Id*. ¶¶ 21–22. He experienced suicidal ideation because he felt he did not belong. *Id*. On March 21, 2019, a peer hit Holguin with an apple, leaving remnants on his face. *Id*. ¶ 30. Although a teacher witnessed and reported the incident, GPUSD staff did not take action to remedy the situation. *Id*. Holguin ended up refusing to attend school and routinely missed turning in homework assignments. *Id*. ¶ 28. In May 2019, Holguin informed M.A. that he did not want to go to school because he was afraid to face his peers' aggressive glares, what plaintiff refers to as being "mad-dogged." *Id*. ¶ 31.

In *Wormuth v. Lammersville Union Sch. Dist*., this court explained the two potential theories of liability a plaintiff may invoke in pleading the third prong when, as here, a public school student with a qualifying disability sues the school district because of peer bullying: the district either "(1) failed to respond to known disability-based bullying or (2) refused to make 'reasonable accommodations' to address known bullying." 305 F. Supp. 3d at 1125 (quoting *Duvall v. Cty. of Kitsap*, 260 F.3d 1124, 1138 (9th Cir. 2001)). As explained below, Holguin sufficiently pleads a claim under the second theory.

Under the first theory, the district faces liability if it does not respond to known disability-based bullying. A "nexus between the alleged disability and the alleged bullying is a prerequisite to a disability-based bullying claim." *Wormuth*, 305 F. Supp. 3d at 1124–25; *Dorsey v. Pueblo Sch. Dist. 60*, 140 F. Supp. 3d. 1102,1117 (noting nexus requires factual allegations showing disability prompted bullying). Here, Holguin does not expressly allege he was singled out because of his disability; he only alleges his disability significantly impacts his appearance and

1  gestures, his ability to read, speak and relate to others socially.  *See* First Am. Compl. ¶ 1.  These

2  allegations do not address whether the bullying was caused by his disability.  *See Wormuth*,

3  305 F. Supp. 3d at 1126 (finding lack of nexus when plaintiff was bullied because of personal

4  animus or some other reason other than his disability or perceived disability); *but see Wagon v.*

5  *Rocklin Unified School District*, 17-1666, 2019 WL 2577336, at *5 (plaintiff sufficiently plead

6  disability-based claim by showing defendant made specific statements referring to plaintiff's

7  symptoms of disability).  Holguin's allegations are not sufficiently specific to plead a claim under

8  this theory.

9       Under the second theory, the district faces liability if it denies reasonable accommodations

10  to address known bullying.  Under Section 504 public entities are prohibited from denying

11  individuals with disabilities "meaningful access" or "reasonable accommodation" to benefits and

12  services. *Mark H. v. Lamehieu*, 513 F.3d 922, 938 (9th Cir. 2008).  Ultimately to succeed on this

13  theory, a plaintiff must show a defendant failed to make reasonable modifications to

14  accommodate his disability. *A.G. v. Paradise Valley Unified Sch. Dist. No. 69*, 815 F.3d 1195,

15  1206−07 (9th Cir. 2016); *see also Wormuth*, 305 F. Supp. 3d at 1126 ("Plaintiff can succeed under

16  this theory by showing the bullying he endured, no matter the motive, hampered his ability to

17  enjoy a free public education and by showing the District did not provide reasonable

18  accommodations to prevent or address this bullying.").  At the pleading stage, the court is not

19  required to evaluate the reasonableness of plaintiff's request. *Brown v. Elk Grove Unified Sch.*

20  *Dist.*, 17-396, 2018 WL 953162, at *4.

21       Defendants argue Holguin has pled himself out of a claim by alleging he "masked the

22  torment he was enduring," and did not report bullying to GPUSD; yet reasonable accommodations

23  were put in place for Holguin, including additional counseling sessions and the disruptive students

24  were removed from his classroom.  MTD at 16–17 (citing First Am. Compl.   ¶ 11).  This

25  argument is unavailing at this stage given the pleadings.  Holguin alleges he reported bullying

26  incidents to teachers and counselors at GPUSD who were indifferent. *See* First Am. Compl. ¶¶ 40

27  −49.  Holguin reported to GPUSD, through his mother, his fear of attending school because of the

28  bullying he experienced. *Id*. ¶¶ 15−30.  Despite Holguin's showing rapid

1  academic decline, depressive symptoms and articulating suicidal thoughts, defendants did not

2  conduct any risk assessment or implement a safety plan.  *Id*. ¶¶ 22−24, 26.

3         Defendant's motion to dismiss claims 1 and 2 against GPUSD is denied.

4                **2.    Claim 5**

5         A plaintiff may establish denial of meaningful access under section 504 by showing there

6  was a violation of one of the regulations implementing section 504, if such violation denied the

7  plaintiff meaningful access to a public benefit.  *A.G. v. Paradise Valley Unified Sch. Dist*. No. 69,

8  815 F.3d 1195, 1204 (9th Cir. 2016).  In *Wormuth*, this court previously explained that when a

9  plaintiff with a qualifying disability is harassed for any reason and the school is put on notice, the

10  school must undertake a "fact-specific" investigation to determine what constitutes a reasonable

11  accommodation.  305 F. Supp. 3d at 1126-27 (citing *A.G.*, 815 F.3d at 1207).  The plaintiff in

12  *Wormuth*, as here, was bullied.  *Id*.  Those experiences affected his mental health and interfered

13  with his academics and his ability to participate in school activities; the District had not addressed

14  plaintiff's reports of bullying.  *Id*.

15         As someone with a learning and socialization disability, Holguin alleges he reported to

16  GPUSD how the bullying was affecting his mental health and academic performance negatively.

17  *See* First Am. Compl. ¶¶ 12, 19, 21−23, 28.   GPUSD did not conduct a risk assessment or an

18  investigation even when Holguin reported his thoughts or plans to commit suicide.  *Id*. ¶¶ 23, 26.

19  Holguin's allegations suffice to plead a claim based on a theory of denial of reasonable

20  accommodations.  *See Brown*, 2018 WL 953162, at *4.

21         Finally, plaintiff who seeks damages for suing a school district due to peer harassment,

22  must also allege "intentional discrimination" or deliberate indifference.  *Wormuth*, 305 F. Supp.

23  3d at 1125.  Deliberate indifference requires "both knowledge that a harm to a federally protected

24  right is substantially likely, and a failure to act upon that likelihood."  *Duvall v. County of Kitsap*,

25  260 F.3d at 1138–39.  Plaintiff only needs to plead a plausible discrimination claim, not prove the

26  discrimination.  *Brown*, 2018 WL 953162, at *3 (plaintiff met "deliberate indifference"

27  requirement because plaintiff provided sufficient allegations that District knew about plaintiff's

28  behavioral issues and decline in his academic performance, among others.).

Here, Holguin makes factual allegations that GPUSD was on notice that he was being subjected to physical and verbal abuse at school.  First Am. Compl. ¶¶ 13, 15, 20−23, 30−31.  Holguin alleges he and his mother discussed the bullying with GPUSD employees, Mr. Hill and Ms. Rios.  *Id*. ¶¶ 20, 23, 28.  He experienced an academic decline and expressed suicidal ideation.  *Id*.  Despite these reports, the GPUSD acted with deliberate indifference in refusing to provide "reasonable accommodations" to address the bullying he experienced at school.  *Id*. ¶¶ 22−24.  GPUSD did not implement a suicide prevention protocol or investigate the bullying.  *Id*.  Holguin pleads plausible allegations of "deliberate indifference."  Defendants' motion to dismiss claim 5 against the GPUSD is denied.

**B.      Liability of Principal Vince Gonzalez**

Defendants argue the court should dismiss claims 3 and 4 against Principal Gonzalez on grounds Gonzalez is statutorily immune from suit under California Government Code section 820.2 and the federal Coverdell Teacher Protection Act.  *See* MTD at 18.  Immunities and other affirmative defenses may defeat claims on a motion to dismiss only when those defenses are established on the face of the complaint.  *See Morley v. Walker*, 175 F.3d 756, 759 (9th Cir.1999); *Jablon v. Dean Witter & Co*., 614 F.2d 677, 682 (9th Cir. 1980).  When deciding whether defenses are established, the court may consider the facts alleged in the complaint, documents attached to the complaint, documents relied upon but not attached to the complaint when authenticity is not contested and matters of which the court takes judicial notice.  *See C.B. v. Sonora Sch. Dist.,* 691 F. Supp. 2d 1123, 1129 (E.D. Cal. 2009).  The court addresses Principal Gonzalez's contentions below.

**1.      Government Code section 820.2**

"Except as otherwise provided by statute, a public employee is not liable for an injury resulting from his act or omission where the act or omission was the result of the discretion vested in him, whether or not such discretion be abused."  Cal. Gov't Code § 820.2.  Discretionary immunity only applies to deliberate and considered policy decisions; it does not apply to lower-level or "ministerial" decisions.  *Caldwell v. Montoya*, 10 Cal. 4th 972, 981-82 (Cal. 1995).

/////

9

1       In the school context, immunity applies when a principal, for example, "actually rendered

2   a considered decision" and "in deciding to perform or not perform the act that led to plaintiff's

3   injury, the principal consciously exercised discretion in the sense of assuming certain risks in

4   order to gain other policy objectives." *Id.* (quoting *Lopez v. So. Cal. Rapid Transit Dist.*,

5   40 Cal. 3d 780, 794 (Cal. 1985)).

6       Immunity under section 820.2 does not automatically attach to Gonzalez's discretionary

7   decision not to investigate Holguin's reports of peer-to-peer bullying.  *Wormuth*, 305 F. Supp. 3d

8   at 1130.  Courts in the Ninth Circuit have declined to apply discretionary immunity when "the

9   direct and immediate supervision of school children does not involve 'basic policy decisions' or

10  an 'area of quasi-legislative policy making.'" *M.M. v. San Juan Unified Sch. Dist.*, No.

11  219CV00398, 2020 WL 5702265, at *12 (E.D. Cal. Sept. 24, 2020) (interpreting § 820.2

12  narrowly, noting discretionary immunity "can[not] generally . . . be resolved at a motion to

13  dismiss" pleading stage); *Wormuth*, 305 F. Supp. 3d at 1130-31 (finding principal was not subject

14  to immunity because his decision not to intervene lacked detailed analysis).

15      Here, Holguin alleges Gonzalez simply decided not to communicate with staff interacting

16  with Holguin daily and to not investigate reports of his being bullied.  *See* First Am. Compl.

17  ¶¶ 25−26.  Defendants have not argued otherwise.  *See generally* MTD; *id*. at 19.  For immunity

18  to attach, Gonzalez would have to show based on the face of the complaint that his decisions were

19  a result of conscious discretion.  *Lopez*, 40 Cal. 3d at 916 ("a public entity must prove that the

20  employee, in deciding to perform (or not to perform) the act which led to plaintiff's injury,

21  consciously exercised discretion in the sense of assuming certain risks in order to gain other

22  policy objectives").

23      At this stage of the case, based on the pleadings, Gonzalez is not statutorily immune under

24  § 820.2.

25              **2.      Coverdell Teacher Protection Act**

26      Principal Gonzalez is immune under the Coverdell Teacher Protection Act of 2011, 20

27  U.S.C. § 6731.  As this court explained in *Wormuth,* "this statute immunizes teachers and

28  administrators for acts and omissions in connection with maintaining control in the classroom."

305 F. Supp. 3d at 1131.  This immunity only applies to acts aimed to control or discipline students for purposes of maintaining order or control of the school; it does not excuse liability for cited conduct that falls within the five categories identified in § 6736(a).  *Id.* (finding immunity applied to school principal because plaintiff had not provided information alleging principal's conduct was within categories of "willful, criminal, grossly negligent, reckless, conscious or flagrant").

Here, Gonzalez was acting in his official capacity as the principal of Tranquility High. Compl. ¶¶ 51−61.  Holguin argues nothing in opposition to alter the conclusion Gonzalez is immune under federal law.  *See generally* Opp'n.  Accepting all pleadings as true and construing them in the light most favorable to Holguin, defendants knew he was being bullied by other students and they failed to take precautions to mitigate that risk.  *See McIntosh v. Clark Cty. Sch. Dist.*, No. 217CV00490, 2017 WL 3996399, at *3 (D. Nev. Sept. 11, 2017).  Holguin has not sufficiently pled that defendants acted affirmatively with willful, criminal, grossly negligent, reckless misconduct or a conscious, flagrant indifference to overcome the Coverdell Act's protection.  The current record does not rule out the possibility Holguin can cure this pleading deficiency.

The court declines to reach defendants' substantive arguments for dismissal of plaintiff's tort claims against Gonzalez because the Coverdell Act immunity at this point forecloses plaintiff's negligence and negligent training and supervision claims against Gonzalez.  *See M.M.*, 2020 WL 5702265, at *13.

Defendants also argue leave to amend the complaint would be futile because it was Holguin's mother who presented the tort claim on his behalf, instead of Holguin himself.  MTD at 21–22 (citing *Pony v. City of Los Angeles*, 433 F.3d 1138, 1142–44 (9th Cir. 2006)).  When Holguin's mother filed the torts claims on his behalf, she was not seeking attorney's fees for herself.  *See Pony*, 433 F.3d at 1142–44.  While Holguin was not a minor at the time the claim was filed, his mother is authorized by statute to file his tort claim on his behalf, *see* Cal. Gov't Code § 910 ("A claim shall be presented by the claimant or by a person acting on his or her behalf. . .").

11

1      Defendant's motion is granted as to claims 3 and 4 with leave to amend, if amendment is

2 possible subject to Federal Rule of Civil Procedure 11. *See Sonoma Cty. Ass'n of Retired Emps.*

3 *v. Sonoma Cty.*, 708 F.3d 1109, 1117 (9th Cir. 2013) (amendment would not cause undue

4 prejudice or be futile.)

5 **IV.   CONCLUSION**

6      The motion to dismiss is **granted** in part and **denied** in part.

7      (1) Defendant's motion is **denied** as to plaintiff's claims 1, 2, and 5 against GPUSD.

8      (2) Defendant's motion is **granted** as to claims 3 and 4 against Gonzalez with leave to

9 amend.

10      Plaintiff may file an amended complaint within twenty-one (21) days of this order.

11      This order resolves ECF No. 24.

12      IT IS SO ORDERED.

13  DATED: July 30, 2021.

CHIEF UNITED STATES DISTRICT JUDGE